## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

|  |  |
|---|---|
| JOSE GUADALUPE VILLEGAS PERALTA, | **Case No.:** 3:25-cv-01718 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, | |
| Defendants. | |

## COMPLAINT

Jose Guadalupe Villegas Peralta, ("Plaintiff"), by and through his counsel brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union") (collectively, "Defendants"); and states as follows:

## INTRODUCTION

1.     This is an individual action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et. seq.* (the "FCRA"), a statute that, among other things, offers protection and recourse for victims of identity theft.

2.     Plaintiff is the victim of identity theft.  In or around July 2022, Plaintiff discovered, while applying for a Connecticut driver's license, that a license had already been fraudulently issued under his name in New Jersey.

3.     This prompted Plaintiff to pull his credit reports at which point he discovered that his identity was used to fraudulently open credit card accounts without his knowledge or consent.

4.     The fraudster incurred charges in Plaintiff's name and then defaulted on payments,

1

delinquencies were added to Plaintiff's credit report, and his credit score plummeted.

5.     Plaintiff took affirmative steps to rectify the situation by complying with FCRA procedures intended to protect victims of identity theft.  Specifically, Plaintiff submitted disputes to the three national credit reporting agencies stating that he was the victim of identity theft and asking that the fraudulent account be blocked from his credit profile.

6.     The receipt of these disputes triggered Defendants' statutory obligations to conduct an investigation and block the fraudulent account from Plaintiff's credit reports.

7.     Based on these factual allegations, Plaintiff asserts that Defendants violated three different provisions of the FCRA:

> a.     In violation of 15 U.S.C. §1681e(b), Defendants failed to devise and implement reasonable procedures to ensure the "maximum possible accuracy" of the information reported in Plaintiff's credit reports.
>
> b.     In violation of 15 U.S.C. §1681i, Defendants failed to conduct a reasonable investigation after receiving Plaintiff's dispute.
>
> c.     In violation of 15 U.S.C. §1681c-2, Defendants failed to block the fraudulent accounts from Plaintiff's credit report within four (4) days of receiving Plaintiff's dispute letter.

8.     Plaintiff brings this action to recover, inter alia, statutory damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses for injuries suffered as a result of Defendants' misconduct. Defendants' erroneous reporting of inaccurate information in Plaintiff's consumer background reports continues to affect Plaintiff's creditworthiness and credit score. As a result of Defendants' misconduct, Plaintiff has suffered a decreased credit score, the loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish,

humiliation, and embarrassment of erroneous credit reports.

**PARTIES**

9.      Plaintiff resides in New Britain, CT and qualifies as a "consumer" as defined and protected by the FCRA.

10.     Defendant Experian is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard, Glendale, California 91203.

11.     Defendant Equifax is a consumer reporting agency that maintains a principal place of business at 1550 Peachtree Street, N.W. Atlanta, Georgia 30309. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

12.     Defendant Trans Union is a consumer reporting agency that maintains its principal place of business at 555 W. Adams Street, Chicago, IL 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

**JURISDICTION AND VENUE**

13.     Jurisdiction arises under 28 U.S.C. 1331 and 15 U.S.C. 1681p.

14.     Venue is proper pursuant to 28 U.S.C. §1391(b) as a substantial part of the events giving rise to the claim occurred in this District.

**SUMMARY OF THE FAIR CREDIT REPORTING ACT**

15.     The FCRA was passed to regulate the conduct of consumer reporting agencies for the purposes of preserving the integrity of the consumer banking system and protecting the rights

of consumers to fairness and accuracy in the reporting of their credit information.

16.    The policy goal of the FCRA is to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports").

17.    Congress recognized consumer reporting agencies "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3).

18.    For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

19.    The first form of protection from identity theft is the "block." That is, when a consumer identifies any information in their credit file that is the product of identity theft, the CRA must block (delete) the reporting of that information within four business days, provided the consumer submits:

      a.   Appropriate proof of the identity of the consumer;

      b.   A copy of an identity theft report;

      c.   The identification of such information by the consumer; and

      d.   A statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).4

20.    The second form of protection is the "fraud alert." That is, upon request of the consumer, a CRA *must* place an "initial fraud alert" in the file of that consumer, and provide that alert along with any credit score generated in using that file, for one year beginning on the date of the request. Unless one year has passed, the CRA can only remove the alert if the consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15

U.S.C. § 1681c-1(a)(1).

21.    The third form of protection the FCRA provides for identity theft victims is a "security freeze." The security freeze proscribes a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.  15 U.S.C. § 1681c-1(i)(1).

22.    In the event a consumer's report is frozen, a CRA is proscribed from selling the information to creditors assessing credit applications from identity thieves using an affected consumer's identity.

23.    Once placed, a security freeze does not expire.  A CRA can remove a security freeze only at "the direct request of the consumer," or if it finds that the freeze "was placed due to a material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A). Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze."  15 U.S.C. § 1681c-1(i)(3)(C).

24.    The fourth form of protection the FCRA provides for identity theft victims is that a CRA may *only* release a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). That is, when a credit transaction is not initiated by the consumer, a CRA may only release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit.  15 U.S.C. § 1681b(c).  No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose.  15 U.S.C. § 1681e(a).

25.    To that end, the FCRA imposes the following twin duties on consumer reporting

agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports. 15 U.S.C. § 1681e(b); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. 15 U.S.C. § 1681i.

26.     Similarly, the FCRA also imposes a duty upon furnishers to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. 15 U.S.C. § 1681s-2b.

27.     The FCRA provides consumers with a private right of action against consumer reporting agencies and data furnishers that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## STATEMENT OF FACTS

### *Identity Theft*

28.     On or about July 1, 2022, Plaintiff, while applying for a driver's license, discovered a fraudster had applied for a driver's license using his identity in the State of New Jersey.

29.     On or about July 1, 2022, Plaintiff filed an incident report with Bloomfield Police Department.

30.     Thereafter, with the assistance of a friend, Plaintiff pulled his credit reports and discovered multiple fraudulent accounts.

### *The Fraudulent Accounts*

31.     On September 27, 2019, the fraudster opened an installment account with Westlake Financial Inc., a Furnisher, totaling $7,203. The Fraudulent Account was reported to Defendants Experian, TransUnion, and Equifax.

32.     On November 28, 2022, the fraudster opened an account with Midland Credit

Management, a Furnisher, totaling $922. The Fraudulent Account was reported to Equifax & Experian.

33.    Thereafter, the fraudster opened another account with Progressive, a Furnisher, totaling $611. Plaintiff received a collection notice arising from this Fraudulent Account from Cain & Weiner Co.

34.    On March 20, 2025, Plaintiff realizing he was the victim of identity fraud filed a Federal Trade Commission identity theft Affidavit.

35.    On August 28, 2025, during a dental appointment, Plaintiff was informed he was covered by Blue Cross insurance, which he has never had and does not currently have. When Plaintiff attempted to verify further information, it was confirmed that his name, date of birth, and SSN are associated with this insurance. However, Plaintiff has never lived at the address on file: 398 S Main St, New Britain, CT 06051-3514.

36.    Thereafter, Plaintiff discovered addresses that did not belong to him on his credit reports. The address 322 E 201ST ST BRONX, NY 10458-1885 was on his Experian and TransUnion credit report. The address 322 E 201ST ST APT 1 BRONX, NY 10458-1885 was also on his Experian and TransUnion credit report. The address 322 E 201ST ST APT GRD BRONX, NY 10458-1885 was also on his Experian, Equifax, and TransUnion reports.

37.    On or about September 15, 2025, a review of public records on LEXIS NEXIS indicated several phone numbers that did not belong to Plaintiff. Specifically, **620-285-9637** (Kansas) listed as primary but belongs to Michael Lemuz. In addition, 347-483-**0069** (listed 2016–2024) & 347-270-**0268** do not belong to Plaintiff.

38.    A further review of public records on LEXIS NEXIS indicated an address not associated with Plaintiff: 322 E 201st St Apt 1, Bronx, NY is listed as the Plaintiff's current

residence from June 2011 to present. Plaintiff has never lived in New York or New Jersey.

### *Defendant TransUnion fails to reasonably investigate Plaintiff's dispute*

39.     On March 6, 2025, Plaintiff contacted TransUnion to place a fraud alert on his credit file.

40.     On March 21, 2025, Plaintiff sent TransUnion a block letter.

41.     On May 21, 2025, Plaintiff sent TransUnion a second certified block letter.

42.     On May 31, 2025, TransUnion denied Plaintiff's Block Request.

43.     On June 13, 2025, Plaintiff sent TransUnion a third Block Request.

44.     On June 21, 2025, TransUnion denied Plaintiff's Westlake Financial Fraud Block request and initiated an investigation into disputed accounts. TransUnion alerted Plaintiff he would receive results within 30 days.

45.     On June 26, 2025, TransUnion was still reporting the fraudulent Westlake Financial account on Plaintiff's credit file with a balance of $6,493. TransUnion, however, removed all the disputed personal information from Plaintiff's credit file.

46.     On September 12, 2025, TransUnion was still reporting the fraudulent Westlake Financial account.

47.     Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

48.     Defendant Trans Union failed to reinvestigate Plaintiff's June 19, 2025 dispute and failed to block both of the disputed Fraudulent Accounts.

49.     Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product

of identity theft.

50.    Defendant TransUnion violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### *Defendant Experian fails to reasonably investigate Plaintiff's dispute*

51.    On March 31, 2025, Plaintiff sent Defendant Experian a block letter.

52.    On May 21, 2025, Plaintiff sent Defendant Experian a second block letter.

53.    On July 22, 2025, Defendant Experian still reported the Fraudulent Bronx address along with the Fraudulent Westlake Financial and Midland Credit Management accounts.

54.    On August 12, 2025, Experian confirmed the Fraudulent Westlake and Midland accounts would remain in Plaintiff's credit file.

55.    On August 29, 2025, Plaintiff discovered Experian was still reporting the Fraudulent Midland Credit Management and Westlake Financial Services accounts along with a Fraudulent address and phone numbers.

56.    On September 12, 2025, Experian was still reporting the three disputed addresses. Two fraudulent phone numbers were removed though two fraudulent numbers remained. Experian removed the Fraudulent account with Progressive but the Midland Credit Management and Westlake Financial Services accounts remained in Plaintiff's credit file. The report also included fraudulent hard inquiries from M&T Bank, Bank of America, and JPMCB Card.

57.    Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

58.    Defendant Experian failed to reinvestigate Plaintiff's June 19, 2025 dispute and failed to block the identity theft information.

59.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable

investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

60.    Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Defendant Equifax fails to reasonably investigate Plaintiff's dispute

61.    On or about March 28, 2025, Defendant Equifax received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

62.    Afterward, Plaintiff updated his address to 178 Broad St, New Britain, CT 06053. However, the property owners at his former residence refused to provide him with any mail or correspondence he might have received from Equifax, claiming they had not received anything on his behalf.

63.    On May 21, 2025, Plaintiff sent a second dispute letter to Equifax.

64.    On June 6, 2025, Plaintiff received a response from Equifax, stating that Equifax would not block the disputed information but would contact the reporting companies to verify the accuracy of the accounts.

65.    On the same day, Equifax sent a separate notice requesting additional documentation, explaining that the identity proof provided did not match the information in his credit file.

66.    On July 17, 2025, Plaintiff obtained his Equifax credit report through Credit Karma. Upon review, the report still reflected the Westlake Financial account with a balance of $6,493. However, Equifax had removed all the previously disputed personal information from Plaintiff's file.

67.     On September 12, 2025, Plaintiff obtained another Equifax credit report. The report showed that Equifax continued to report the Westlake Service Inc. account, but it had removed the account associated with Caine & Weiner Company.

68.     Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff.

69.     Defendant Equifax failed to reinvestigate Plaintiff's March 21, 2025, and May 21, 2025 dispute and failed to block the identity theft information.

70.     Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

71.     Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Plaintiff's Damages

72.     Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

73.     Plaintiff filed a police report

74.     Plaintiff filed an FTC ID Theft Report.

75.     Plaintiff disputed with the Defendants multiple times throughout 2025.

76.     Plaintiff immediately identified himself as an identity theft victim and requested the Defendants block the account information that was the product of identity theft.

77.     The Defendants failed to block the Fraudulent Accounts, inquiries, and personal information that were the product identity theft despite Plaintiff's multiple disputes.

78.     Instead, the Defendants repeatedly disregarded Plaintiff's credible disputes.  Often

responding to a victim of identity theft that the furnisher of the account that was the product of identity theft had verified the account as accurate.

79.    The Defendants understand it is often the case that an identity thief's activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit file.

80.    Despite Plaintiff's multiple disputes to the Defendants that the fraudulent accounts were the product of fraud, and he was a victim of identity theft, Defendants Equifax, Experian, and Trans Union hardly wavered in their refusals to block the information.

81.    As a direct result of Defendant Equifax's ardent refusal to block the Fraudulent Accounts, which were a product of identity theft, Defendant Equifax has continued to saddle Plaintiff with an open loan account and collections that were the product of identity theft.

82.    As a direct result of Defendant Experian's ardent refusal to block the Fraudulent Accounts, which were was a product of identity theft, Defendant Experian has continued to saddle Plaintiff with an open loan account and collections that were the product of identity theft.

83.    As a direct result of Defendant Trans Union's ardent refusal to block the Fraudulent Accounts, which were a product of identity theft, Defendant Trans Union has continued to saddle Plaintiff with an open loan account and collections that were the product of identity theft.

84.    Due to Defendants' ardent refusals to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

85.    Further, and due to Defendants' inexplicable refusal to block the Fraudulent Accounts from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendants Equifax, Experian, Trans Union, repeatedly, to no avail.

86.     Plaintiff has suffered significant damages as a direct result of fraudulent accounts appearing on his credit report.

87.     On July 7, 2025, Plaintiff applied for a Capital One Platinum Mastercard. His application was approved with a credit limit of $300 and an interest rate of 29.74%. These unfavorable terms reflect the poor credit conditions caused by fraudulent accounts appearing on his credit report.

88.     On September 2, 2025, Plaintiff applied for a credit card with JPMCB Bank but was denied. The denial was based on negative account history and unpaid accounts, with the bank verifying Plaintiff's credit through Experian.

89.     On September 8, 2025, Plaintiff applied for a credit card with PenFed but was denied. The denial letter, also dated September 8, 2025, stated that the decision was based on the occurrence of a severe derogatory event and that PenFed could not extend credit on the terms requested.

90.     On September 8, 2025, Plaintiff also applied for a credit card with Synchrony Bank but was denied.

91.     At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

92.     At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

93.     Beyond the financial harm, and credit denials he had received, Plaintiff has endured ongoing emotional distress, including frustration, anxiety, and deep concern over his financial

stability and future. The repeated denials of credit applications have left him feeling helpless and fearful of using credit altogether, forcing him to rely on guidance from friends and family to manage his daily financial decisions.

94.    The fraudulent reporting has resulted in multiple credit denials, including attempts to obtain a mortgage, a car loan, and various credit cards, all of which were rejected because of negative and inaccurate information tied to his name. Without access to credit, Plaintiff has been forced to cover expenses out of pocket, such as paying cash for purchases he otherwise would have financed, including the potential purchase of a car. He has also faced ongoing housing costs, paying monthly rent of approximately $800 to $850, since the negative credit history has prevented him from qualifying for a home loan.

95.    Compounding the financial strain, Plaintiff supports two children, one of whom is a minor, which has increased his financial burden. At times, he has had to borrow money from friends just to meet his day-to-day living expenses. The loss of access to credit has also caused him to miss valuable opportunities, including the ability to secure loans or other financial products that would have improved his quality of life and provided greater financial security.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(Defendants Equifax, Experian, and Trans Union)**

96.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

97.    On numerous occasions, the Defendants prepared patently false consumer reports concerning Plaintiff.

98.     Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had loan account and that he was delinquent on at least one occasion.

99.     Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

100.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

101.    Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

102.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account the fraudulent accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent accounts an open and derogatory loan account that was the product of identity theft.

103.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose

veracity is doubted and questioned and disbelieved by the Defendants.

104.    The Defendants' conduct, actions, and inactions were willful, rendering Defendants Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105.    Plaintiff is entitled to recover attorneys' fees and costs from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

106.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. *Id*.

107.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

108.    On numerous occasions in 2025, Plaintiff disputed the inaccurate information with the Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him namely, the Fraudulent Accounts that were the product of identity theft which was a very stressful situation for the Plaintiff.

109.    Plaintiff disputed the identity theft information to the Defendants several times to no avail.

110.    On at least one occasion, Plaintiff supported his dispute with a copy of the police report and the FTC ID Theft Report.

111.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Equifax conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

112.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

113.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

114.    Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Defendants, repeatedly.

115.    The Defendants' repeated refusals to block the disputed Fraudulent Accounts provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

116.    Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by

failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

117.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

118.    Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

119.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent accounts that were the product of identity theft.

120.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to

privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

121.    The Defendants' conduct, actions, and inactions were willful, rendering the Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

122.    Plaintiff is entitled to recover attorneys' fees and costs from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681c-2
## Failure to Block Identity Theft Information

123.    Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

124.    Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

125.    Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

126.    Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim. Plaintiff further supported the fact that he was an identity theft victim by providing to the Defendants copies of the Police Report and FTC IDT Report.

127.    The Defendants should have blocked the identity theft information but failed to do so at every turn.

128.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his

credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent accounts an open and derogatory loan account that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent accounts an open and derogatory loan account that were the product of identity theft.

129.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

130.    The Defendants' conduct, actions, and inactions were willful, rendering the Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

131.    Plaintiff is entitled to recover attorneys' fees and costs from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)    An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, et seq.;

(c)    An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d)     Such other and further relief as this Honorable Court may deem just and proper,

including any applicable pre-judgment and post-judgment interest, and/or

declaratory relief.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands jury trial on all issues so triable.

Dated: October 13, 2025

*/s/ Emanuel Kataev*
Emanuel Kataev, Esq. Bar# 358292021
**CONSUMER ATTORNEYS, PLLC**
68-29 Main Street
Flushing NY 11367
T: (718) 412-2421 (office)
F: (718) 489-4155 (facsimile)
E: ekataev@consumerattorneys.com

*Attorneys for Plaintiff,*
*Jose Guadalupe Villegas Peralta*